[Civ. No. 15918. Second Dist., Div. One. Feb. 18, 1948.]

HAYDEN BOWMAN, Appellant, v. JAMES VICTOR, Respondent.

694

Lee Combs, Wallace B. Scales and Robert W. McIntyre for Appellant.

Vincent A. Marco and Jerry K. Harter for Respondent.

BARTLETT, J. pro tem.—Appellant, a beauty shop operator, commenced an action on April 5, 1946 ,to restrain respondent from soliciting appellant's customers, the names of whom respondent had learned in the course of his employment by appellant. Respondent answered denying that he had solicited appellant's customers and cross-complained alleging a partnership under a written option agreement and a mutual agreement made on March 15, 1946, to terminate the same by the terms of which agreement appellant was to return $1,100 paid by respondent to him under this option agreement.

The cross-complaint prayed, among other things, that the contract of January 17, 1946, be cancelled and that appellant refund to respondent the $1,100 which had been paid by respondent under the agreement. Appellant answered this cross-complaint by denying any partnership relation; admitted an option agreement was entered into on January 17, 1946; admitted a down payment of the $1,100 advance under the option agreement, and denied any liability to repay it.

The court rendered judgment against the respondent that he be restrained from solicitation of the business of any of the former customers of appellant, and that appellant return to respondent the sum of $1,100. The appeal is from that portion of the judgment awarding the $1,100 to respondent.

Appellant is the owner of a beauty shop located in Westwood Village, Los Angeles, California. On January 17, 1946, while respondent was in the employ of appellant, they entered into an option agreement for a purchase by respondent of a 49 per cent interest in the business. Under the terms of this agreement, respondent made a partial payment of $1,100 on the purchase price by January 28, 1946. Thereafter a dispute arose in regard to the management of the shop and following this dispute the parties met on March 15, 1946, and entered into an agreement whereby the contract of January 17, 1946, was rescinded, the right of respondent to purchase an interest in the business was cancelled, and, therefore, appellant was to return to respondent the $1,100 he had received from him.

At the trial of the action no controversy developed regarding the injunction phase of the matter, the appellant stating at the outset that the respondent had moved so far away from Westwood Village that there was no longer any competition between the two as any attempt to solicit business would now be a vain act. However, on account of the possibility that respondent might return to Westwood Village, the request for an injunction was not abandoned.

The real trial was upon the issues raised by the cross-complaint and the answer thereto. Appellant states that there are two grounds upon which the judgment should be reversed: (1) The evidence does not support the finding that an oral contract of rescission was entered into; (2) Assuming, for purposes of argument, that there was a contract of rescission made March 15, 1946, respondent neither pleaded nor proved performance thereof on his part.

The findings of the court which are pertinent to a consideration of these questions are as follows:

"I.

"That defendant and cross-complainant, upon leaving the employment of the plaintiff, did not take with him a list of patrons of the place of employment.

. . . . . . . . . . . . . . .

## "V.

"That the parties entered into a valid verbal agreement on March 15, 1946, whereby plaintiff agreed that the sum of $1,100 was to be returned to defendant and cross-complainant and defendant and cross-complainant surrendered all rights under the option to purchase of January 17, 1946.

## "VI.

"That the requirement made by plaintiff that the defendant and cross-complainant refrain for a period of one year from working as a beauty operator in Westwood Village, County of Los Angeles, State of California, was not a part of the agreement entered into on March 15, 1946.

## "VII.

"That the plaintiff has not paid the sum of $1100.00 or any portion thereof to defendant and cross-complainant."

The finding under attack is finding V, set forth above. The rule governing appellate courts in the premises is set forth in *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183] at 429:

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Treadwell* v. *Nickel,* 194 Cal. 243 [228 P. 25]; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 P. 1157]; *Wing* v. *Kishi,* 92 Cal.App. 495 [268 P. 483].)"

The court's finding was made on sharply conflicting testimony. The respondent unequivocally testified to the making of this contract and to its terms as set forth in the finding attacked. In this testimony he was corroborated by two other witnesses. From this standpoint there was ample and direct testimony to support the finding. To avoid the effect of this, appellant contends that there exists a confidential relationship between employer and employee to the extent

that the employee is prohibited from revealing trade secrets and information gained during the employment to others; that neither party will do anything to injure the other party; that all contracts contain an implied provision incorporating the law governing the parties to and the subject matter of the contract and that, in the words of appellant, there was "therefore no meeting of the minds on March 15, 1946." That there be a meeting of the minds of the parties to a contract is an essential element of a contract and the court in making its finding that such a contract was entered into necessarily found as a fact that there was such a meeting of the minds. When two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court and conclude that there was some secret intent in the mind of respondent on March 15, 1946, to violate the implied covenants referred to if, in fact, such implied covenants existed.

There are two other findings of the trial court which are not attacked but bear materially upon this question. These are the findings specifically made that respondent did not take with him a list of patrons of the place of his employment, and that there was no provision in the contract that he should refrain from working as a beauty operator in Westwood Village. If respondent had the mental reservations on March 15, 1946, suggested by appellant it would be reasonable to presume that he would have compiled just such a list and taken it with him when he left that employment. There is no testimony in the record that on the date of the rescission respondent had any connection with any other beauty parlor and it is reasonable to presume that he would not make any such connection until he saw how the conversation with appellant would turn out.

At the conversation on March 15, 1946, appellant asked respondent to remain another week to finish appointments that he had booked for the following week. It is a reasonable deduction that during the following week, while still at appellant's shop, he made some connection with another beauty shop in Westwood for future employment. The only testimony as to just what happened during that week is that of respondent and his testimony is somewhat ambiguous. He was asked if during this week he told any people he was going to work at the Charm Cottage. He said he did those

who requested it. The following question was then asked and the following answer given:

"Q. What do you mean, 'Those who requested it'?

"A. I had given them an appointment. I had gone to the appointment book they wanted for the following time. I told them I wouldn't be there. They said, 'Where do you expect to be?' I said, 'The only thing I can do is get in touch with you.'"

After March 25, 1946, he did go to work for the Charm Cottage. While he was there the proprietor of the Charm Cottage sent out over a thousand cards announcing the association of respondent with the proprietor of that business. Respondent gave him no list but did pick out about 25 names from a list presented to him, which seemed familiar, and addressed announcement cards to them.

All of this leads to no irresistible deduction that on March 15, 1946, respondent had such mental reservations or secret intentions that a meeting of the minds did not take place on that date, especially when taken into consideration with the other unattacked findings of the court, and also with certain other testimony. On March 23, 1946, respondent went to appellant and demanded his $1,100, at which time appellant presented to him a written agreement that he would not engage in any type of work as a beauty operator within a radius of four miles of appellant's establishment, and stated that he would not return the $1,100 unless respondent signed it. Respondent stated, and the court found, that was not part of the agreement. He also stated that that was the first time the subject had been mentioned and did not sign.

On March 25, 1946, respondent returned to appellant and offered to sign the proposed agreement as to the work in Westwood Village and again demanded his $1,100. Notwithstanding that, payment of the $1,100 was again refused.

We have here reviewed all of the testimony, including that most favorable to the appellant, which could possibly bear on this subject, and are led to the conclusion that there was a meeting of the minds of the parties on March 15, 1946, and that the court's finding that a contract of rescission was made on that date is correct.

■ Appellant's second ground that the judgment should be reversed complains that respondent neither pleaded nor proved performance on his part. He states in his brief, "the law has been thoroughly established that a party suing upon

a contract must plead and prove compliance himself with the terms and conditions of the contract sued upon before recovery may be had." His whole argument is based on a misapprehension as to just what the action set forth in the cross-complaint was. The cause of action pleaded in the cross-complaint was purely one to have it established by the court that on March 15, 1946, the prior contract between the parties of January 17, 1946, had been rescinded by mutual consent and that as an incident thereof the parties to the contract of January 17, 1946, should be placed *in statu quo* by the return to the respondent of the $1,100 he had paid under it and for which he had no tangible return. It will readily be seen, therefore, that this was in no sense an action on a contract.

██ What is the rescission of a contract? It means not only its annulment or abrogation, but the placing of the parties *in statu quo* as well (*Sessions* v. *Meadows,* 13 Cal.App. 2d 748 [57 P.2d 548]).

██ The cross-complaint alleged, among other things, the entering into the contract of January 17, 1946, the terms of that contract, the payment under it of $1,100 by respondent to appellant, the rescission on March 15, 1946, by mutual agreement of that contract of January 17, 1946, and the failure of appellant to repay the $1,100. These allegations were sufficient to state a cause of action such as this. The court found that the contract of January 17, 1946, was an option agreement whereby respondent was purchasing an interest in a business. When it was rescinded on March 15, the contract of January 17 was extinguished. (Civ. Code, § 1688.) There was nothing left for respondent to perform. What is there to perform when a rescission has been made? All that is required of either party is that set forth in section 1691, subdivision 2, of the Civil Code, as follows:

"He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

██ Here nothing of value had been received by respondent. In such a contingency the usual requirement of actions of rescission that a restoration be alleged and proved is not required (*Crane* v. *Ferrier Brock Development Co.,* 164 Cal. 676 [130 P. 429]; *Browne* v. *T. J. Lawrence Co.,* 204 Cal.

424 [268 P. 631]). No such issue as the one we are discussing was raised at the trial. The answer to the cross-complaint consisted of a categorical denial that the contract of rescission of March 15, 1946, had ever been made and an admission of the nonpayment of the $1,100. No estoppel on the part of the respondent nor any waiver on his part or any affirmative defense was set up by appellant. The court tried the case strictly upon the issues raised by the pleadings and therefore so far as the cross-complaint was concerned, in view of the appellant's answer, the sole issue was, did the parties mutually rescind the agreement of January 17, 1946, on March 15, 1946?

There is another aspect of this case. The appellant by his complaint for an injunction, and the respondent by his cross-complaint for rescission, asked equitable relief from the court. It was the duty of the court to dispose of the entire controversy and to require both parties to do equity. The only part of the judgment appealed from is that portion requiring the appellant to return the $1,100 referred to. The evidence disclosed that in all equity and in good conscience he should have done so. Surely he should not receive the equitable relief which he requested unless he himself was to do equity. All that the portion of the judgment appealed from requires is that he do just that and thereby place the parties in the position they were in prior to January 17, 1946.

Judgment is affirmed.

White, J., concurred.

Doran, Acting P. J., concurred in the judgment.