[Civ. No. 19422. Second Dist., Div. One. Aug. 10, 1953.]

EMANUEL FURST, Appellant, v. D. OLIVER SCHARER
et al., Respondents.

Borah & Borah and A. Noah Borah for Appellant.

Rinehart, Merriam, Parker & Berg, Jay D. Rinehart, Hahn & Hahn and Allyn H. Barber for Respondents.

WHITE, P. J.—Plaintiff's action herein was in the form of a common count for money had and received. The defendant D. Oliver Scharer was the seller, defendant Robert H. Eaton the broker, and defendant Altadena Escrow Corporation was the escrow agent, in a transaction involving the sale to plaintiff of the real property, equipment and goodwill of a bakery business in the city of Monrovia, which transaction plaintiff attempted to rescind prior to its consummation upon the ground of fraud. Trial before the court resulted in a judgment of nonsuit as to Eaton, the broker, and a judgment at the close of trial in favor of the remaining defendants. From such judgments plaintiff appeals.

By his complaint for money had and received plaintiff sought to recover the sum of $7,000 which he had delivered to defendant broker, who in turn had deposited the same with the escrow corporation pursuant to the terms of escrow instructions executed by plaintiff and defendant Scharer. As developed at the trial, the fraud upon which plaintiff based his notice of rescission consisted of asserted misrepresentations as to the net income of the bakery business for the years 1949 and 1950. Recovery was sought against the broker, Eaton, by reason of the fact that his commission of $1,700 was paid to

him out of the funds in escrow prior to service of the notice of rescission. This payment, it is contended, was made in violation of the escrow instructions.

The agreement of sale was entered into on August 8, 1951, in the form of a deposit receipt executed by both parties and the broker. The purchase price was $34,000, of which $8,500 was allocated to the value of equipment and fixtures. Under the agreed terms of sale the buyer was to pay $19,000 in cash and assume the principal balance of approximately $15,000 on a first trust deed. By the terms of the escrow instructions, the buyer authorized acceptance of a title subject to (1) taxes; (2) ''Covenants, conditions, restrictions, easements, rights and rights-of-way of record''; and (3) the deed of trust of record. The instructions authorized the escrow agent to pay the broker his commission ''upon receipt of the title report in escrow showing the title as called for, vested in the seller.'' Having received a title report, the escrow agent paid the commission. Thereafter, on August 14 or 15, 1951, the escrow agent was served with the notice of rescission.

Appellant contends that it was error to grant a nonsuit as to the defendant broker, for the reason that he had ''received money to which he was not entitled and which had come to him in the first instance directly from the plaintiff.'' Further, it is urged, the broker was not entitled to the money because it was disbursed to him before title to the property had been cleared to the satisfaction of the buyer under the escrow instructions. ■ The record, however, discloses that the funds which were deposited in the escrow had been received by the broker as agent of the seller pursuant to the deposit receipt as an initial payment on the purchase price, and in such circumstances title thereto vested in the seller. (See *Norris* v. *San Mateo County Title Co.,* 37 Cal.2d 269, 273 [231 P.2d 493].) ■ Furthermore, the buyer ''released'' to the seller in the escrow instructions and authorized the payment of the commission upon receipt of a title report by the escrow agent showing title in the seller subject to ''covenants, conditions, restrictions, easements, rights and rights-of-way of record.'' The party wall agreement which appellant contends should have been accepted by him before the title was considered satisfactory was a matter of record. Therefore the escrow agent did not violate its instructions in paying over the money to the broker Eaton.

However, a holding as to the correctness of the nonsuit as to the defendant broker is rendered unnecessary, for the reason

that, under well established rules as to the power of an appellate court when it is contended that the evidence is insufficient to support a finding, the judgment in favor of defendant vendor herein must be affirmed; and hence there remains no basis for recovery against the broker. In this connection, it should be noted that, with reference to the conduct and actions of the broker and his employee, appellant's attorney at the trial had this to say: "First of all, in justice to Mr. Barber's client, I felt that they did not, on their own hooks, make any misrepresentation. I spoke to Mr. Eaton before this suit was brought and I was satisfied that whatever he said and whatever Miss Stewart said they merely repeated statements made to them by their principal, and I don't want any misapprehension in the case. I don't feel that they acted in any wise other than as reputable persons, but there is that situation where one may innocently commit a fraud by passing on a representation made to them."

With respect to the basic issue of fraud, as developed by the evidence, the trial court found that a salesman of the broker represented that the property was earning an income of about $600 per month, "and thereafter and prior to the execution of said deposit receipt of August 8, 1951, the defendant Scharer represented to said plaintiff that the net profits of the bakery business operated by the defendant Scharer on his property during the years 1949 and 1950 were approximately $11,000.00 and $9,000.00 respectively, after deducting $300.00 monthly rental and $90.00 weekly salary for said owner; but in fact the production of said business, as thus stated, was incorrect and said sums so represented were in excess of the actual production of said business during said periods."

However, the trial court further found (and this is the finding of which appellant complains) "that at all times herein referred to the plaintiff herein was an experienced real estate investor, and that said plaintiff did not believe or rely upon any of said representations in entering into the agreement of purchase evidenced by the deposit receipt of August 8, 1951, nor was said plaintiff induced by any of said representations to enter into said agreement of purchase; nor did said representations as to the net annual business income, plus rental and salary (which indicated an aggregate amount of $19,527.00 for the year 1949, and $17,415.00 for the year 1950) furnish or supply any basis used or relied upon by plaintiff in determining the value of the Scharer real property which said plaintiff contracted to purchase for the sum of $34,000.00, and

which said alleged earnings, if made, would have paid the full purchase price of said property in less than two years.''

Appellant contends that this finding is not supported by the evidence, for the reason that the trial court erred in applying an ''objective'' rather than a ''subjective'' test in determining whether there was reliance upon the representations. Appellant cites *Heffernan* v. *Freebairn*, 34 Cal.2d 715, where the court said at page 719 [214 P.2d 386] : ''The standards by which the buyer's acts must be judged were set forth by this court in *Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291], 'Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. . . . Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. (Authorities cited.) ''No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.'' . . .' . . .''

Appellant submits that the latter portion of the quoted finding, to the effect that the representations as to profit did not furnish a basis used or relied upon by plaintiff and that ''such earnings, if made, would have paid the full purchase price of said property in less than two years,'' demonstrate that the court applied an ''objective'' test, and further that the test was unfair, in that the court overlooked the necessity for additional investment in supplies and other expenses, the personal services of an owner or manager, and the payment of taxes. It is urged that this court may reverse the finding when it is based upon an erroneous theory of the law applicable to the evidence.

It is not apparent from the finding, however, that the court applied an erroneous theory to the evidence or held the plaintiff ''to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man.'' To the contrary, it appears that the court's finding of nonreliance was based upon the qualifications, knowledge and experience of the plaintiff, an experienced real estate investor. ██ As was further said, in *Seeger* v. *Odell* (quoted in *Heffernan* v. *Freebairn, supra*, p. 719), ''If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery.''

In a memorandum opinion the trial court said, in part:

"In his opening statement plaintiff's attorney asserted reliance upon representations that the net profits of the business for 1949 and 1950 were approximately $11,000 and $9,000 after deducting $300 monthly rent and $90 weekly salary. . . .

"Fifty-two weeks of salary at $90 makes $4,680 for the year; and the rent would be $3,600 as represented. Total is $8,280. When added to $11,247 the profit for one year appears to be $19,527. And for the other ($9,135 plus $8,280) the sum of $17,415. Plaintiff was buying for $34,000 and paying $19,000 into escrow, taking subject to a $15,000 trust deed. On this basis the place would yield the entire cash price, or substantially that, in one year. Plaintiff is an experienced real estate investor. The court finds, as stated at the trial, that plaintiff did not believe in or rely upon any such representation.

 In the circumstances here presented, it cannot be held that the trier of fact acted arbitrarily in rejecting the testimony of the plaintiff on the subject of reliance. Hence, under well settled rules, the finding on the subject may not be disturbed on appeal. (*Ortzman* v. *Van Der Waal*, 114 Cal. App. 2d 167, 170 [249 P.2d 846, 252 P.2d 7].) It is equally well settled that the findings of the trial court are presumed to be supported by the evidence, and an appellant must shoulder the burden of showing the contrary. Appellant himself testified that he had not engaged in the bakery business, but had been a real estate investor, and that he was buying the real estate involved in this litigation as an investment.

 There is in the record testimony given by appellant himself that respondent Scharer told him at the very inception of the negotiations leading up to the sale that he, respondent Scharer, had been allocating $300 per month as rental for the real property. It is also undisputed in the record that prior to entering into the agreement for sale, respondent Scharer suggested to appellant that the former's foreman, who had been operating the business, might be interested in leasing the real property at a rental of $450 per month. Respondent Scharer also testified that when this leasing proposal was presented to his foreman the latter declined to lease the property at the suggested rental and this fact was reported to appellant. The record also shows that prior to attempting a rescission of his purchase appellant had negotiated a lease with one Bolkin for a term of five years at a rental of approximately $450 per month.

There is also testimony that prior to the making of the sales agreements appellant made inquiry as to the production of the bakery business then being conducted by respondent Scharer; that in response to appellant's request he was furnished with admittedly correct figures showing the gross sales of the business for the years 1949 and 1950, as well as the first six months of 1951. Respondent Scharer also produced for appellant's inspection the 1950 income tax return, which disclosed that, of the acquisition cost of the property, the sum of $27,500 had been allocated to buildings, and that these buildings had been depreciated for prior years to the extent of $2,300; and that during the year 1950 depreciation was claimed in the amount of $1,200.

The foregoing, and other testimony, warranted the court in concluding that appellant was not purchasing the property with a view to operating the business himself, but on the contrary, was in fact purchasing the property as an investment, and as appellant himself testified, with a view to leasing the property at a rental of approximately $450 per month.

■ Appellant's claim that the court should have made more ample findings or should have made findings upon other or additional matters, cannot be sustained. The court did make detailed findings of fact covering all the material issues presented by the evidence, and these findings clearly set forth the nature and character of the transactions involved. The court expressly found, upon substantial evidence, including, it may be said, appellant's own testimony, that he was a real estate operator and had never been engaged in the bakery business; that he was buying respondent Scharer's property as an investment; that appellant was experienced in real estate investments and did not believe nor rely upon the representations of respondent Scharer which appellant asserted furnished the basis of his claimed right to rescind his agreements of purchase. (*Rauer's Law etc. Co.* v. *Bradbury,* 3 Cal.App. 256, 260, 261 [84 P. 1007] ; *Gantner & Mattern Co.* v. *Hawkins,* 89 Cal.App.2d 783, 786 [201 P.2d 847].)

■ Equally without merit is the assignment entitled "Error to Fail to Declare Contract Subsisting," under which appellant urges that equity required that the sum in dispute be held for the benefit of plaintiff, subject to defendants' showing damage, or a declaration that the contract was in force and effect and should be carried out. The contract had been repudiated by the plaintiff some eight months before the trial, and his action was upon the theory of rescission. As pointed

out by the trial court, plaintiff made no proof that defendant seller was not damaged to the extent of the fund in hand, and hence plaintiff was not entitled to recover any portion of it. (See discussion in *Baffa* v. *Johnson*, 35 Cal.2d 36, 38, 39 [216 P.2d 13] ; also *Norris* v. *San Mateo County Title Co.*, 37 Cal.2d 269, 270 [231 P.2d 493].)

For the foregoing reasons, the order granting a nonsuit as to defendant Eaton and the judgment for the remaining defendants from which this appeal was taken are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.