Virginia S. BENSINGER, Plaintiff,

v.

John R. DAVIDSON, United States of America, Defendants.

No. 17179.

United States District Court
S. D. California, Central Division.

Dec. 18, 1956.

Robert N. Richland and Martin Perlberger, Beverly Hills, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty. Chief, Tax Division, Robert A. Wyshak and Andrew J. Weisz, Asst. U. S. Attys., Los Angeles, Cal., for defendant, the United States.

JAMES M. CARTER, District Judge.

This case raises two principal questions (1) what property rights are affected by a government tax lien, and (2) what is the nature and extent of the right of a vendee, under a conditional sales contract covering real property, to recover for unjust enrichment.

The action, commenced in the state court, was denominated an action for "declaratory relief." It was removed by the government to this court on the ground that it was in substance an ac-

tion to quiet title against a lien claimed by the United States, on real property, 28 U.S.C.A. § 2410, and that jurisdiction existed by virtue of the government's removal, 28 U.S.C.A. § 1444, Wells v. Long, 9 Cir., 1947, 162 F.2d 842.

Bensinger, the owner and vendor of real property, seeks to quiet title to the property against a claim of lien for delinquent federal income taxes owed by a conditional vendee. Obviously the lien could have no effect on the owner's title had the conditional sales contract never existed. The existence and history of the conditional sales contract create our problems.

On April 25, 1952, Bensinger, owner of a house and lot in Bel Air, California, entered into a conditional sales agreement with Mr. and Mrs. John A. Purcell, whereby the Purcells agreed to purchase the property for $69,500 with legal title reserved to the vendor by the contract until the purchase price was paid. Purcells made a down payment of $10,000 and were to pay the balance at the rate of $1,200 a month. The Purcells were in possession of the property from May 1, 1952 until January 29, 1953, and made six monthly payments totaling $7,200. The Purcells thus made total payments of $17,200. On January 29, 1953, after default, the Purcells surrendered possession of the property to Bensinger, and on January 31, 1953, entered into an agreement with her acknowledging default and releasing her from any and all obligations, for a consideration in the sum of $1,500 paid to Purcells. At the same time the Purcells delivered a quitclaim deed to the property to Bensinger.

Prior to any of this, and on September 7, 1951, a notice of tax lien in the sum of $9,846.36 plus accruing penalties and interest due the United States of America from John A. Purcell for income taxes, had been filed in the office of the County Recorder, Los Angeles County. The lien had arisen when the assessment list was received by the Collector of Internal Revenue on June 18, 1951, showing an assessment of $14,835.-

36. Credits reduced that amount to the sum shown above.

Purcells had recorded the conditional sales contract and the assertion by the government of the lien led to this action.

On March 24, 1953, Bensinger entered into an agreement to sell the property to one Fox, and an escrow was opened. In order to secure the release of the government lien (as well as other liens not here involved) and complete the sale, Bensinger entered into a written agreement with the United States by which the lien was released from the real property, and by agreement transferred to the sum of $12,000 on deposit in the escrow without prejudice to the rights of the parties as thereafter determined.

## I

Purcells had a property right to which the Government lien attached.

The assessment of the unpaid taxes against John A. Purcell resulted in "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Internal Revenue Code of 1939, § 3670, 26 U.S.C.A. 1939 ed. § 3670. " * * * The lien shall arise at the time the assessment list was received by the collector * * *." Internal Revenue Code of 1939, § 3671, 26 U.S.C.A. 1939 ed. § 3671. This occurred on June 18, 1951. On filing of the notice of tax lien with the County Recorder on September 7, 1951, the world had notice thereof, Section 3672, Internal Revenue Code of 1939, 26 U.S.C.A. 1939 ed. § 3672, Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894.

Such a lien attaches to after-acquired property, Salsbury Motors, Inc., v. United States, 9 Cir., 1954, 210 F.2d 171, certiorari denied 347 U.S. 953, 74 S.Ct. 679, 98 L.Ed. 1099; Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L. Ed. 56; Citizens Nat. Trust & Savings Bank of Los Angeles v. United States, 9 Cir., 1943, 135 F.2d 527.

The right of the United States to collect taxes is not subject to state law, Metropolitan Life Insurance Co. v. United States, 6 Cir., 1939, 107 F.2d 311, 313, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400, but state law may control on what it considers or creates as property, Metropolitan Life Insurance Co. v. United States, supra; See, E. & J. Gallo Winery v. C. I. R., 9 Cir., 1955, 227 F.2d 699, 705.

We have no doubt that a conditional sales contract involving real estate is property under California law. It is a well known animal in the legal menagerie of the state. Section 3306, California Civil Code, sets forth the measure of damages for a breach of an agreement to convey real property, and Section 3307, Civil Code, the measure of damages for breach of an agreement to purchase real property. Section 655, Civil Code, provides "In What Property May Exist. There may be ownership * * * of all obligations * * *". When the Purcells on April 25, 1952, entered into the conditional sales agreement or more aptly, an agreement for the sale and purchase of real estate, they had a property right, certainly, in the contract, and we think an equitable interest in the land.[1]

When Purcells, after paying $17,-200, defaulted and later surrendered possession on January 29, 1953, they had a potential cause of action for unjust enrichment against Bensinger, Freedman v. Rector, etc., of St. Mathias Parish, 1951, 37 Cal.2d 16, 230 P.2d 629, 31 A.L.R.2d 1; Barkis v. Scott, 1949, 34 Cal.2d 116, 208 P.2d 367. Whether they could or not recover depended on the factors we hereafter discuss.

The lien of the government for unpaid taxes does not limit itself to tangible property. It is a broad and comprehensive lien, attaching to all of the taxpayer's property except that which may be specifically exempted, Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 1940, 114 F.2d 380, 382. In the last cited case it attached to a claim for work, labor and materials, and defeated a subsequent assignment of the claim to the appellant bank. In Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56, the lien attached to money due the taxpayer for fees as a state receiver and defeated a subsequent attachment—execution from the state court. In Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894, the lien attached to a claim for recovery of moneys paid on corporate assessments and defeated a subsequent assignment thereof.

A chose in action [2] is property under California law, Civil Code, § 14 (3). Causes of action for Tort have been held to be property, Carver v. Ferguson, Cal.App.1953, 254 P.2d 44, Finley v. Winkler, 1950, 99 Cal.App.2d Supp. 887, 222 P.2d 345. A fortiori, a cause of action for unjust enrichment is property.

This cause of action grew out of Purcells' rights created by the conditional sales contract. As we demonstrate later, it is the practice in California to use the quiet title action as one method to cut off any rights of the conditional vendee and in such an action, plaintiff's relief may be denied unless he does equity to the conditional vendee, i. e., unless he refunds to the conditional vendee, the amount by which the plaintiff vendor has ben unjustly enriched.

As between herself and the Purcells, Bensinger could have eliminated the Purcell interest by agreement or

---

1. See: S. R. A., Inc., v. State of Minnesota, 1946, 327 U.S. 558, at page 565, 66 S.Ct. 749, at page 754, 90 L.Ed. 851: " * * * This Court has been of the opinion that contracts for the sale of land transfer to the purchaser the equity in the land. We think this contract did so. That equity is realty. It was owned by the vendee. The United States retains only a legal title as security. In substance it is in the position of a mortgagee * * *".

2. See: Filipowicz v. Rothensies, D.C.Pa. 1940, 31 F.Supp. 716, 721.

quitclaim deed. This she attempted to do. She could not in such manner cut off or eliminate the government's lien, Metropolitan Life Insurance Co. v. United States, 107 F.2d at page 313.

We conclude that the government lien attached to Purcells' cause of action for unjust enrichment. See, 41 Cal.L.Rev. [1953] 241, 245, "Federal Tax Liens."

## II

The extent of the government's lien.

The problems created by the situation of a defaulting vendee's attempt to avoid a forfeiture of monies paid, or the vendee's claim that the vendor is being unjustly enriched, have been considered by California cases.[3]

The problems arise in various situations: For example, (1) the vendor's suit to quiet title, Nelson v. Dangerfield, 1954, 125 Cal.App.2d 146, 269 P.2d 953; Petersen v. Ridenour, 1955, 135 Cal.App.2d 720, 287 P.2d 848, where the court will refuse relief unless the vendor refunds the excess of the part payments over the damage caused by vendee's breach, Barkis v. Scott, 1949, 34 Cal.2d 116, 120–121, 208 P.2d 367.

(2) Actions by the vendor for damages for breach of contract by vendee, Royer v. Carter, 1951, 37 Cal.2d 544, 233 P.2d 539; Fellner v. Steinbaum, 1955, 132 Cal.App.2d 509, 282 P.2d 584.

(3) Action by the vendee to rescind the contract and for recovery of money paid to the vendor, Bird v. Kenworthy, 1954, 43 Cal.2d 656, 277 P.2d 1; Furst v. Scharer, 1953, 119 Cal.App.2d 605, 260 P.2d 198.

(4) Actions for declaratory relief, Major-Blakeney Corp. v. Jenkins, 1953, 121 Cal.App.2d 325, 263 P.2d 655.

(5) Actions by the vendor to recover the down payment, Norris v. San Mateo County Title Co., 1951, 37 Cal.2d 269, 231 P.2d 493.

(6) Actions by the vendee to recover amounts paid under the theory of unjust enrichment, Baffa v. Johnson, 1950, 35 Cal.2d 36, 216 P.2d 13; Freedman v. The Rector, etc., 1951, 37 Cal.2d 16, 230 P.2d 629, 31 A.L.R.2d 1.

■ Equitable principles are involved in the quiet title actions. It has long been the law that "in the absence of a showing that the vendor would realize more than the benefit of his bargain that he might quiet title to the property without refunding any part of the price paid," Barkis v. Scott, 34 Cal.2d 116, at pages 120–121, 208 P.2d 367, at page 370, and cases cited therein; and conversely if "the vendor has received more than the benefit of his bargain, the court is precluded by section 3369 from quieting the vendor's title unless he refunds the excess, Barkis v. Scott, 34 Cal.2d 116, [121], 208 P.2d 367, and cases cited", Baffa v. Johnson, 1950, 35 Cal.2d 36, 39, 216 P.2d 13, 14.

■ The actions by the vendee to rescind or for recovery after an alleged rescission, also involve equitable principles. Here equity demands that the vendor be restored to substantially the same position he would have been in, had the contract never been made, Bowman v. Victor, 1948, 83 Cal.App.2d 693, 699, 189 P.2d 876.

In Freedman v. Rector, etc., of St. Mathias Parish, 1951, 37 Cal.2d 16, on page 20, 230 P.2d 629, on page 631, 31 A.L.R.2d 1, in a suit by the vendee to recover monies paid, the trial court had found that plaintiff's breach was willful, and therefore under Section 3275, Cal. Civil Code, vendee would be denied relief, but the court said, "We rave concluded, however, that the damage provi-

---

3. Throughout the cases, there runs discussion of certain of the following sections: § 3275 Cal.Civil Code (Relief in case of forfeiture, "except in a case of a grossly negligent, willful, or fraudulent breach of duty"); Section 3294 Cal. Civil Code (Exemplary damages; when allowable); Sections 1670–1671 Cal. Civil Code (liquidated damages); Section 3307 Cal.Civil Code (damages for breach of an agreement to purchase real property); and Section 3369 Cal.Civil Code, reading, "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case * * *".

sions of the Civil Code together with the policy of the law against penalties and forfeitures provide an alternative basis for relief independent of section 3275." In that case the vendor had received $2,-000. There was a $900 brokerage fee. The defendant-vendor contended there were also other expenses incurred that reduced the amount of the down payment. The case was reversed with instructions for a new trial on the issue as to what part of the down payment "accrued to the *net benefit* of defendant." 37 Cal.2d at page 23, 230 P.2d at page 633. [Emphasis supplied.] This was an attempt to do equity between the parties.

In only one situation is there a Code section on damages expressly applicable, viz., the action by vendor for breach of contract against the vendee. Here Section 3307 Cal.Civil Code states the measure of recovery.

Royer v. Carter, 1951, 37 Cal.2d 544, 233 P.2d 539, 543, was an action by the vendor for breach of contract. Definitely Section 3307 of the Civil Code was called into play. The appellate court reversed, holding that the damages were computed as of the wrong date and should be computed as of the date of the breach of the agreement to purchase the property. The case was remanded with the direction to try the issue of damages and the court stated if the vendor "is given the equivalent of the proceeds of the sale under section 3307 she is not also entitled to expenses that she would have incurred in any event."

But the court went further and stated "In many cases, however, the vendee's breach may make it necessary for the vendor to incur additional expenses to realize the benefit of his bargain. * * * (I)njustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach. * * * When such additional expenses are the natural consequences of the breach, they may be recovered in addition to those provided for in section 3307." 37 Cal.2d at page 550, 233 P.2d at page 543. Again this was an attempt to do equity, notwithstanding the express provisions of Section 3307, Civil Code.

We think the California cases rest on the principle of "unjust enrichment" and the policy of the law against forfeitures. This language runs through the California cases.[4] We therefore approach the problem on equitable principles. Has Bensinger been unjustly enriched, and if so, by how much?

In the case at bar, Bensinger received a down payment of $10,000 and additional periodic payments of $7,200, a total of $17,200. By stipulation, various amounts expended by Bensinger, listed (a) to (i) in the pretrial stipulation, have been agreed upon. In addition the parties have stipulated that the fair rental value of the property for the occupancy by the Purcells was the sum of $750 per month for eight and one-half months, a total of $6,375; and that the value of the property as of the date of the breach on December 15, 1952 was $69,500; and that this was the same price at which Bensinger originally sold the property by the conditional sales contract of April 25, 1952 and the same price at which she subsequently resold the property. How much then has Ben-

---

4. The government quotes from Perkins **v.** Spencer, Utah, 1952, 243 P.2d 446–451, the following: "When the contract provision is unenforceable, the only way the rights of the parties can be adjusted is on the basis of damages ordinarily recoverable for such breach of contract"; and argues that the California courts in the cases heretofore cited have repeatedly used the term "damages", and as we understand the argument, that the court must look to what the dam-

ages would have been had the vendor sued the vendee for breach of contract to purchase; and since in the case at bar the property was resold within a few months after the default and breach, for the same price as originally sold, there was no basis for damages` under Section 3307 Cal.Civil Code and hence Bensinger's claims to the retention of the moneys paid cannot be sustained. We do not understand the California cases to so hold.

singer been unjustly enriched by the $17,200 received? What amounts may she properly offset against this gross figure? On what remaining amount of money does the government's lien exist?

The burden of proof is on the vendee, or here, the government standing in the vendee's shoes, to prove the amount by which the vendor has been unjustly enriched over and above the amounts she could properly retain, Furst v. Scharer, supra, 119 Cal.App.2d at page 612, 260 P.2d at page 202; Baffa v. Johnson, supra, 35 Cal.2d at page 39, 216 P.2d at page 14; Major-Blakeney Corp. v. Jenkins, supra, 121 Cal.App.2d at pages 332–333, 263 P.2d at pages 659–660; Petersen v. Ridenour, supra, 135 Cal.App.2d at page 726, 287 P.2d at page 851. In the case at bar the facts are stipulated and no question of burden of proof arises.

### A. Fair Rental Value of the period of occupancy of the property by Purcells

In substance we are to undo what the parties have done and to do equity between them. Certainly the Purcells should be charged with the value of the use and occupancy of the property during the eight and one-half months they were in possession. In Bird v. Kenworthy, supra, the appellate court affirmed, where the "trial court found that the reasonable rental value of the property while in the possession of Bird was $37,400, an amount much in excess of the amount he paid under the contract," 43 Cal.2d at page 659, 277 P.2d at page 2, and denied recovery to Bird, the conditional vendee. The sum of $6,375 is therefore a proper item to be retained by Bensinger.

### B. Taxes, Maintenance and Trust Deed payments

If we say that Bensinger is entitled to the fair rental value of the property, then since ordinarily an owner renting property pays the taxes, maintenance and trust deed payments, these would not be additional items that we could properly consider. In fact the plaintiff in her closing brief states that "of all of the items listed in the stipulation of facts * * * entered into between the parties hereto only items E (taxes), F (maintenance) and G (trust deed items) would have been incurred by Bensinger had she never entered into the sales contract with Mr. and Mrs. Purcell." We may therefore not properly consider these three items if plaintiff vendor is allowed the rental value of the property.

There is a loose end however, in that the stipulation reads in (F) "To payments made to professional gardener for maintenance and *restoration* (undertaken by purchasers) $279.50."

The parties, at the request of the court, have broken down the item of $279.50 so that the facts now show that Bensinger made payments of $25 for eight and one-half months for the maintenance of the property by a gardener, totaling $212.50; and at the termination of the occupancy by the Purcells paid the gardener $67 to restore the premises in the condition in which they would have been had they been rented by Bensinger, reasonable wear and tear excepted. Thus, although Bensinger would have made the payments totaling $212.50 had the property been rented, the item of $67 is a proper matter for her to retain in connection with the claim of unjust enrichment.

### C. Attorneys' Fees

The parties have stipulated to two items of attorneys' fees paid by Bensinger:—$1,800 in connection with the conditional sales agreement and escrow, and $2,500 concerning the default and the obtaining of a release and quitclaim deed. To each of these the government objects that the plaintiff vendor may not take them into account, and cites the rule that "Generally, fees paid to attorneys are not recoverable from the opposing party either as costs, damages or otherwise in the absence of express statutory or contractual authority," Viner v. Untrecht, 1945, 26 Cal.2d

261, 272, 158 P.2d 3, 9. But here, in determining the problem of unjust enrichment, we are ascertaining what expenses the vendor was out of pocket by reason of the conditional sales contract. We think clearly the two items of attorneys' fees, totaling $3,800 represent an amount Bensinger is entitled to retain.

### D. Broker's Commission

 It is stipulated that a broker's commission was paid by Bensinger in the sum of $3,475. The government concedes this item. It is a proper one for retention by Bensinger. Freedman v. Rector, etc., of St. Mathias Parish, supra, 37 Cal.2d at page 23, 230 P.2d at page 633.

### E. Title Guarantee Costs and Escrow charges

 The parties have stipulated to the sum of $344.00 paid by Bensinger for title costs and escrow fees. This likewise is a proper item for retention by Bensinger.

### F. Expenses in moving from the premises in May of 1952, after the execution of the Conditional Sales Contract

 Since we allow Bensinger to retain the fair rental value of the Purcells' occupancy, then since Bensinger would have moved out either under the conditional sales contract or under a rental agreement, we think the stipulated item for moving, in the sum of $420.16 is not a proper item for retention.

### G. Consideration paid to the Purcells for the Release and Quitclaim Deed

 The parties have stipulated that $1,500 was paid to the Purcells for the release and quitclaim deed. This was a proper item of expense to be taken into account and the government so concedes.

We conclude that from the gross figure of $17,200 received by Bensinger,

the plaintiff vendor, in any action by the Purcells for unjust enrichment, she could have retained the following sums:

| | |
|---|---|
| (a) Attorneys' fee on conditional sales contract | $1300.00 |
| (b) Broker's commission | 3475.00 |
| (c) Escrow, Title Guarantee | 344.00 |
| (f) Paid gardener for restoration | 67.00 |
| (h) Attorneys' fees re default, etc. | 2500.00 |
| (i) Consideration paid Purcells | 1500.00 |
| Stipulated Fair rental value | 6375.00 |
| Total | $15,561.00 |

Thus Purcells' cause of action for unjust enrichment would have amounted to $1,639.00.

But the government's tax lien existed only against John A. Purcell.

Section 164 Cal. Civil Code refers to "real or personal property, or any interest therein," and states that when "any such property is acquired by a husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the community property of said husband and wife." This language was the result of the amendment of 1935, Stats.1935, c. 707, p. 1912.

 The agreement for purchase and sale described the Purcells as "husband and wife." No intention contrary to the presumption above appears. We think the interest of the Purcells in the agreement was an interest in real property and the presumption applies.[5] The stipulated facts do not overcome the presumption.

The cause of action for unjust enrichment grows out of the contract for purchase and sale of the real estate. We think it is so tied in with the community

5. But see Peiser v. Bradbury, 1903, 138 Cal. 570, 72 P. 165, where under an earlier wording of Section 164 Civil Code, an interest under a contract to purchase real estate was held not to be property within the section.

interest in the contract that the cause of action is also community property.

In California, with certain exceptions, not applicable here, the community property is liable for the debts and obligations of the husband, Stratton v. Superior Court, 1948, 87 Cal.App.2d 809, 811, 197 P.2d 821; Farmers' Exch. Nat. Bank v. Drew, 1920, 48 Cal.App. 442, 447, 192 P. 105; See: Grolemund v. Caferata, 1941, 17 Cal.2d 679, 111 P.2d 641, certiorari denied 314 U.S. 612, 62 S.Ct. 87, 86 L.Ed. 492.

The lien of the government therefore is good against the sum of $1,639.00 of the money in escrow.