Ellen BEEGHLY and Kindig & Beebe, Plaintiffs,

v.

Glen H. WILSON, also known as Glenwood H. Wilson; Washington National Insurance Company; United States of America, Defendants.

Civ. No. 942.

United States District Court
N. D. Iowa, W. D.

July 5, 1957.

George Davis, Whicher & Davis, Sioux City, Iowa, for plaintiffs.

Yelderman, Martin & Smith, Austin, Tex., for defendant Glen H. Wilson.

John J. Vizintos, Shull, Marshall, Mayne, Marks & Vizintos, Sioux City, Iowa, for Washington Nat. Ins. Co.

F. E. Van Alstine, U. S. Dist. Atty., and Philip C. Lovrien, Asst. U. S. Dist. Atty., Sioux City, Iowa, for defendant United States.

GRAVEN, District Judge.

In this case the plaintiffs are holders of judgments against the defendant Glen H. Wilson. That defendant was a general agent of the defendant Washington

National Insurance Company. Under his general agent's contract he was entitled to commissions on renewal premiums paid on the policies written by him. That contract is dated November 1, 1949. The defendant United States of America, hereinafter referred to as the Government, is the holder of claims for unpaid income taxes against the defendant Glen H. Wilson which are the subject of a tax lien. The Government claims priority over the plaintiffs as to the renewal commissions owing and to become owing the defendant Glen H. Wilson. The defendant Washington National Insurance Company makes a claim in connection with the renewal commissions to which reference will be made later.

On November 4, 1953, the plaintiff Ellen Beeghly recovered a judgment against the defendant Glen H. Wilson in the District Court of Iowa in and for Woodbury County in the sum of $5,000. On the same day the plaintiff Kindig & Beebe also recovered a judgment against that defendant in the same court in the sum of $2,000. On November 8, 1954, the Commissioner of Internal Revenue made an assessment against the defendant Wilson for delinquent income taxes in the sum of $1,819.43 for the tax year 1952 and in the sum of $1,088.40 for the tax year 1953. Prior to the forepart of 1953 the defendant Wilson was a resident of and domiciled at Sioux City, Woodbury County, Iowa. From that time until the present he has been a resident of and domiciled in Travis County, Texas.

The Commissioner filed notice of the tax liens in the office of the County Clerk of Courts of Travis County, Texas, on January 13, 1955. He also filed notice of those liens in the office of the County Recorder of Woodbury County, Iowa, on January 21, 1955.

On December 16, 1955, the plaintiffs caused general executions to be issued on their judgments. Under those executions notices of garnishment were served on the defendant Washington National Insurance Company on December 20, 1955. As of the date of the garnishment that garnishee was not indebted to the defendant Wilson for renewal premiums. However, as of August 1, 1956, it was indebted to him for such commissions in the sum of $552.73. Under the defendant Wilson's general agent's contract, he also was entitled to commissions on the renewal premiums paid after August 1, 1956, on policies which had been written by him.

Chapter 630, Code of Iowa 1954, I.C.A., makes provision for proceedings auxiliary to execution. On January 21, 1956, the plaintiffs commenced the present proceedings in the District Court of Iowa in and for Woodbury County under the provisions of that Chapter. The original parties defendant to the proceedings were Glen H. Wilson and the Washington National Insurance Company.

On February 10, 1956, the Government served notice of levy on the Washington National Insurance Company claiming a lien upon renewal commissions owing and to become owing Glen H. Wilson under his general agent's contract. Glen H. Wilson and Washington National Insurance Company appeared and filed pleadings in the proceedings instituted by the plaintiffs. In its answer filed therein, the Washington National Insurance Company set forth that it had been served with the Government's notice of levy. The plaintiffs thereupon made application to the District Court of Iowa in and for Woodbury County to have the United States of America made a party defendant to the action. That application was granted. Upon being made a party to the action, the United States of America removed to this Court.

There is not involved in this case Section 191, Title 31, U.S.C.A., which is known as the Government priority statute. That statute is only applicable in insolvency cases. In the present case there is no claim or showing that the defendant Glen H. Wilson was or is insolvent. There is involved Sections 6321,

6322, and 6323, Title 26, U.S.C.A. Those sections provide as follows:

Section 6321:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

Section 6323:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice * * *"

It is not controverted that the office of the County Clerk of Courts in Texas and the office of the County Recorder in Iowa are the proper offices for the filing of notices of federal tax liens under Section 6323 (a) (1). See Section 335.-11, Code of Iowa 1954, I.C.A. The Internal Revenue Code of 1954 became effective August 16th, 1954. Under the provisions of that Code the claim of the Government for taxes becomes a lien on the date of their assessment. Prior to the effective date of that Code such a claim did not become a lien until the date the Collector of Internal Revenue received from the Commissioner of Internal Revenue an assessment list carrying the unpaid tax liability of the delinquent taxpayer. In the present case the claims of the Government were assessed on November 8th, 1954, and the lien of the Government came into existence on that date.

■ In the present case the right of the defendant Glen H. Wilson to the renewal commissions constituted intangible property, *i. e.*, a chose in action. Section 6321 is broad in its scope. It makes a Government tax lien a lien "upon all property and rights to property, whether real or personal." In the case of Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 1940, 114 F.2d 380, 382–383, the Court in referring to the tax lien statute stated:

"The statute covering collection of taxes is broad and comprehensive and Congress intended to subject all of a taxpayer's property, except that specifically exempt to the payment of taxes. 'Property' is a word of very broad meaning and when used without qualification, may reasonably be construed to include obligations, rights and other intangibles, as well as physical things."

Section 6321 was formerly Section 3670, 26 U.S.C. In the case of Glass City Bank of Jeanette Pennsylvania v. United States, 1945, 326 U.S. 265, at page 267, 66 S.Ct. 108, at page 110, 90 L.Ed. 56, the United States Supreme Court stated:

"By Section 3670, U.S.C., 26 U.S.C.A.Int.Rev.Code, § 3670, Congress impressed a lien upon 'all property and rights to property, whether real or personal, belonging' to a tax delinquent. Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."

■ It is well settled that under that statute the Government has a lien upon

the intangible property of a delinquent taxpayer. The tax lien is a continuing lien and will attach to obligations which come into existence thereafter. Glass City Bank of Jeanette Pennsylvania v. United States, supra. In that case the tax lien was held to attach to the claim of a taxpayer for services rendered subsequent to the time the lien came into existence. The tax lien has been enforced against various types of intangible property. It has been enforced against the cash surrender value of life insurance policies owned by the taxpayer and this without reference to the question of whether the policies were fully matured or whether notice was given to the beneficiaries. Kyle v. McGuirk, 3 Cir., 1936, 82 F.2d 212; Knox v. Great West Life Assur. Co., D.C.1952, 109 F. Supp. 207; United States v. Ison, D.C. 1946, 67 F.Supp. 40; Smith v. Donnelly, D.C.1946, 65 F.Supp. 415. It has been enforced against annuity and endowment policies. Cannon v. Nicholas, 10 Cir., 1935, 80 F.2d 934; United States v. Trout, D.C.1942, 46 F.Supp. 484. The tax lien has been enforced against disability payments payable under life insurance policies. Fried v. United States, D.C.1955, 150 F.Supp. 486, reversed sub nom, Fried v. New York Life Insurance Co., 2 Cir., 1957, 241 F.2d 504, certiorari denied 77 S.Ct. 1382. It has been enforced against a cause of action of a contract vendee of real estate against his vendor for restitution. Bensinger v. Davidson, D.C.1956, 147 F.Supp. 240. In an article by Paul E. Anderson entitled "Federal Tax Liens—Their Nature and Priority," 41 California Law Review 241 (1953), the author states (p. 251):

> "Once the federal tax lien has attached to certain property, the taxpayer is powerless to affect or to destroy the rights of the Government. * * * As of the date that the lien attaches, the property has, in effect, two owners, the United States and the taxpayer."

In the case of Bensinger v. Davidson, supra, there was a tax lien outstanding against a contract vendee of real estate who had made substantial payments under the contract. Under the California law he had a cause of action for restitution against his vendor. The contract vendee released his claim to the property by executing a quitclaim deed for a modest sum. It was held that such a settlement was not binding upon the Government and that it could enforce its tax lien against the vendor for the amount due the vendee as determined by the applicable California law.

Where there is a tax lien outstanding against a taxpayer, it would seem that if the Government chose to enforce that lien against intangibles to the fullest extent, then any bank paying a check of such taxpayer, any insurance company making payments of cash surrender values, disability payments or annuity payments, any party making payment to such taxpayer for services, or any party settling either a contract or tort claim with such taxpayer would be subject to the hazard of paying the same over again to the Government. Except as to such parties that come within the protection of Section 6323, the tax lien would for all practical purposes be a secret lien since it would come into existence and continue from the time the taxes were assessed in Washington, D. C. It would appear that the Government as a matter of policy has been sparing in its enforcement of tax liens against intangibles of the kind noted. See Note, Effect Of A Federal Tax Lien On A Bank Deposit, 42 Iowa L.Rev. 412–420 (1957). In this connection it should be noted that state laws relating to exemptions are ineffective as against a Government tax lien. The only exemptions as to federal tax liens are those contained in Section 6334, 26 U.S.C.A. Those exemptions are:

"(1) Wearing apparel and school books.—Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of his family;

"(2) Fuel, provisions, furniture and personal effects.—If the taxpayer is the head of a family, so much of the fuel, provisions, fur-

niture, and personal effects in his household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $500 in value;

"(3) Books and tools of a trade, business, or profession.—So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $250 in value.

\* \* \* \* \* \*

"(c) No other property exempt.— Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)."

It is to be noted that no exemption is afforded as to insurance or personal earnings.

■ It seems clear in the present case that the Government acquired a lien upon the chose in action for renewal commissions owned by the defendant Glen H. Wilson. The next question is whether that lien has priority over the claims of the plaintiffs. In that connection it is desirable to summarize the chain of events in chronological order. That order is as follows:

(1) – November 4, 1953: Plaintiffs recover judgments in District Court of Iowa in and for Woodbury County.

(2) – November 8, 1954: Government tax lien comes into existence.

(3) – January 13, 1955: Government files notice of tax lien in Travis County, Texas, under Section 6323.

(4) – January 21, 1955: Government files notice of tax lien in Woodbury County, Iowa, under Section 6323.

(5) – December 20, 1955: Garnishment notices served on Washington National Insurance Company under executions issued pursuant to plaintiffs' judgments.

(6) – January 21, 1956: Plaintiffs institute proceedings auxiliary to their executions in District Court of Iowa in and for Woodbury County.

(7) – February 10, 1956: Government serves notice of levy under tax lien on Washington National Insurance Company.

The situation is (1) the plaintiffs recovered their judgments before the Government's tax lien came into existence; (2) the Government's tax lien was in existence and notices of it had been filed in the county offices before the Washington National Insurance Company was served with garnishment notices under the executions issued pursuant to plaintiffs' judgments; (3) those garnishment notices preceded the Government's notice of levy, and (4) the plaintiffs' proceedings auxiliary to execution were instituted prior to the Government's notice of levy.

The plaintiffs' claim to priority is based upon several grounds. They claim that since their judgments were rendered prior to the time the Government filed its notices of tax liens in the county offices referred to they are "judgment creditors" within the purview of Section

6323 above set out which provides that a Government tax lien shall not be valid against a "judgment creditor" until notice is filed in the designated office. They also claim priority because their garnishment notices were served and their proceedings auxiliary to execution in the nature of a Creditors' Bill were instituted before the Government served its notice of levy. This latter claim involves several provisions of the Iowa law. Chapter 626, Code of Iowa 1954, I.C.A., relates to executions. Section 626.1 of that Chapter provides, in part, as follows:

"Judgments or orders requiring the payment of money, or the delivery of the possession of property, are to be enforced by execution. * * *"

Section 626.21 of that Chapter provides as follows:

"Judgments, money, bank bills, and other things in action may be levied upon, and sold or appropriated thereunder, and an assignment thereof by the officer shall have the same effect as if made by the defendant."

Section 626.26 of that Chapter provides as follows:

"Property of the defendant in the possession of another, or debts due him, may be reached by garnishment."

Rule 54(b) of the Iowa Rules of Civil Procedure, 58 I.C.A., provides, in part, as follows:

"The officer serving a writ of attachment or execution shall garnish such persons as the plaintiff may direct as supposed debtors, or having in possession property of the principal defendant, which shall be effected by a notice served in the manner and as an original notice in civil actions, forbidding his paying any debt owing such defendant, due or to become due, and requiring him to retain possession of all property of the defendant in his hands or under his control, to the end that the same may be dealt with according to law, * * *."

Chapter 630, Code of Iowa 1954, I.C.A., under which the plaintiffs instituted these proceedings relates to proceedings auxiliary to execution.

Section 630.16 of that Chapter provides as follows:

"At any time after the rendition of a judgment, an action by equitable proceedings may be brought to subject any property, money, rights, credits, or interest therein belonging to the defendant to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants."

Section 630.18 of that Chapter provides as follows:

"In the case contemplated in sections 630.16 and 630.17, a lien shall be created on the property of the judgment debtor, or his interest therein, in the hands of any defendant or under his control, which is sufficiently described in the petition, from the time of the service of notice and copy of the petition on the defendant holding or controlling such property or any interest therein."

In this connection the claim of the plaintiffs is that they come within the scope of the "diligent creditor" rule. In support of that claim they rely upon the cases of Bridgman v. McKissick, 1863, 15 Iowa 260, and United States v. Fidelity & Deposit Co., 5 Cir., 1954, 214 F.2d 565. In both cases a debtor had transferred property in fraud of creditors. In the case of Bridgman v. McKissick, supra, it was held that a judgment creditor who brought an action to set aside a fraudulent conveyance had priority over the holder of an older judgment who had not instituted such an action. In the case of United States v.

Fidelity & Deposit Co., supra, it was held that a bonding company which was a creditor of a taxpayer and which filed suit to set aside a fraudulent conveyance had priority over a Government tax lien which was not in existence at the time the conveyance was made. The rationale of those decisions was that after the conveyance the grantor did not have any interest in the property which was the subject matter of the conveyance to which a lien could attach and that the only right any creditor had was the right to bring an action to set aside the conveyance. As pointed out in those decisions, a conveyance which is fraudulent as to creditors is nevertheless binding as to the grantor and after such a conveyance he cannot claim any interest in the property which was the subject matter of the conveyance.

It is believed that the situation in the present case does not come within the purview of the decisions in those cases. In the present case, as heretofore noted, the property in question, i. e., the chose in action for renewal commissions, was in existence and owned by the defendant Glen H. Wilson at the time the Government's tax lien came into existence. Thus it is not a case like the cases relied on by the plaintiffs where there was no property interest to which a lien could attach.

■ It is well settled that under the Iowa law no lien is acquired by garnishment—all that the garnishor acquires is the right to proceed against the garnishee personally. Pierre v. Pierre, 1930, 210 Iowa 1304, 232 N.W. 633. Proceedings auxiliary to execution under Chapter 630, Code of Iowa 1954, I.C.A., are in the nature of a Creditors' Bill. Under Section 630.18 of that Chapter the commencement of such proceedings does create a lien against the property involved. In this case the plaintiffs' garnishments were made and the proceedings auxiliary to execution were instituted after the Government had filed its notices of lien. See United States v. Liverpool & London & Globe Insurance Co., 1955, 348 U.S. 215, 75 S.Ct.

247, 99 L.Ed 268, where the Government's tax lien was subsequent to the plaintiff's garnishment but prior to the plaintiff's judgment.

■ It seems clear that the plaintiffs' claims for priority based upon the "diligent creditor" rule or upon their garnishments or by their institution of proceedings auxiliary to execution are not well founded. That leaves for consideration their claim that they are entitled to priority because of the provisions of Section 6323 heretofore set out. Under that Section a Government lien for taxes is not "valid as against any * * * judgment creditor" until notice of the same has been filed. In the present case the plaintiffs' judgments were rendered on November 4, 1953. The notice of the Government's tax lien was not filed until January, 1955. It is the claim of the plaintiffs that the judgments obtained by them on November 4, 1953, gave each of them the status of a "judgment creditor" under the provisions of Section 6323. It is the claim of the Government that a creditor by merely obtaining a judgment does not thereby become a "judgment creditor" within the provisions of Section 6323. It is the claim of the Government that the plaintiffs did not acquire a lien upon the property involved prior to the filing of the notice of the Government's tax lien and that lacking such lien the plaintiffs are not entitled to priority under Section 6323.

■ Judgment liens are creatures of statute. Miller v. Bank of America, 9 Cir., 1948, 166 F.2d 415, 417. See also Riesenfeld, Collection of Money Judgments In American Law—A Historical Inventory and A Prospectus, 42 Iowa Law Review 155 (1957). Under Section 624.23, Code of Iowa 1954, I.C.A., a judgment becomes a lien upon the real estate of the judgment debtor upon its rendition. A judgment becomes a lien upon personal property of the judgment debtor by levy. Rule 260, Iowa Rules of Civil Procedure. In the present case there was no levy under the plaintiffs' judgments prior to the filing of the notice

of the Government's tax lien. The plaintiffs had not acquired any lien upon the property in question prior to the filing of the notice of the Government's tax lien. At that time they had the status of creditors who had reduced their claims to judgment but who had not acquired any lien as to any personal property of the judgment debtor.

■ In the present case there is not involved the vexatious question of a "specific and perfected" lien. See Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905 (1954). At a recent Bar meeting the current state of the law in regard to conflicts between holders of non-federal claims and the Government was summarized as follows: "If it's heads the Government wins; if it's tails the holder of the non-federal claim loses." In this connection it is to be noted that the tax lien of which the Government filed notice is most general and inchoate. However, the "specific and perfected" lien rule adopted by the United States Supreme Court is not applicable to Government tax liens; it is only applicable to non-federal liens which come in conflict with Government tax liens.

■ Section 6323 heretofore set out purports to afford protection to mortgagees, pledgees, purchasers and judgment creditors. However, in order to come within the protection of that Section they must meet the "conventional type" test. United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. Unless the judgment or mortgage is of the conventional type it does not come within the scope of Section 6323. The judgments involved in the present case were conventional money judgments rendered by a court of record of general and original jurisdiction. Therefore, they cannot be eliminated from the provisions of Section 6323 by the "conventional type" test.

■ There is for consideration the question of whether the plaintiff judgment holders are without the scope of Section 6323 because of their lack of liens. Section 6323 makes no reference to the matter of lien in connection with "judgment creditors." Section 6323 makes no reference to the matter of recording, yet recording is required. See cases cited in Mason City and Clear Lake Railroad Co. v. Imperial Seed Co., D.C.N.D.Iowa, 152 F.Supp. 145. Somewhat similarly, it is held that in order for the holder of a judgment to be a "judgment creditor" within the provisions of Section 6323 he must be a judgment lien creditor. Miller v. Bank of America, 9 Cir., 1948, 166 F.2d 415; United States v. Levin, D.C.1955, 128 F.Supp. 465; United States v. Fisher, D.C.1948, 93 F.Supp. 73; Bank of America National Trust and Savings Ass'n v. United States, D.C.1946, 73 F.Supp. 303. In the case of United States v. Fisher, supra, the rule is stated as follows (93 F.Supp. at page 76):

"The creditor must have obtained his judgment, and in the case of personal property have execution levied thereon, before a lien capable of priority over that of the United States for taxes could be created."

The case of Miller v. Bank of America, supra, involved the priority of claims to the taxpayer's bank account between a judgment holder and the Government, under what is now Section 6323. The Government was the holder of tax liens. The creditor obtained his judgment but had not obtained a lien on the property at the time the Government filed notice of its tax liens and gave notice of levy thereunder. The trial court granted priority to the Government. The judgment holder appealed. The holding of the trial court was affirmed by the United States Court of Appeals for the Ninth Circuit. That Court stated (166 F.2d at page 417):

"Appellant asserts that the above federal statutes should be literally construed and since the word 'lien' is omitted in connection with the term 'judgment creditor' as used therein, that it was not necessary

for him to take any further action to perfect his right to the fund on deposit with the Bank of America: that the entry and docketing of the judgment was sufficient to entitle him to priority over the perfected lien of the Government in said fund.

"The principle that a clear and unambiguous statute must be literally construed is long established.

"If a literal construction would defeat the object or scope intended by Congress, or would result in 'absurdities so gross "as to shock the general moral sense", then the courts may be entitled to depart from the strict wording in order to give the statute a reasonable construction.'

"While the interpretation of the statute insisted upon by appellant probably would not have absurd or shocking results, it would clearly defeat the object intended by Congress. Moreover, it would be unreasonable to conclude that the Government intended to place itself at a disadvantage in procuring a tax lien when the decisions of the courts and the very history of the legislation in question show that before the enactment of the above statutes no lien whatsoever existed in favor of any class or classes of creditors.

"Although the precise question presented has not been decided, there have been many decisions under the statutes here involved where the courts by implication exclude the theory advanced by appellant. In all these cases it is certain that it is the *lien* created by the claim of a creditor within the meaning of recording acts which is contemplated, and not just the claim itself."

The "lien" requirement rule has been recognized in the following cases: Ersa, Inc., v. Dudley, D.C.1955, 134 F.Supp 627; United States v. 52.11 Acres of Land, D.C.1947, 73 F.Supp 820; United

States v. Record Pub. Co., D.C.1945, 60 F.Supp. 194. In those cases it was held that the judgment holder met the requirement. The United States Supreme Court has not as yet passed upon the question but, as above noted, the Federal Courts that have passed upon the question are in agreement that in order for the holder of a judgment to constitute a "judgment creditor" within the purview of Section 6323 such holder must have acquired a lien prior to the filing by the Government of notice of its tax lien. It is the holding of the Court in the present case that the Government is entitled to priority as to the property involved.

The defendant Washington National Insurance Company claims the right to deduct from any funds due to the defendant Wilson its expenses, attorney fees, and costs in connection with the garnishment proceedings. This claim is based upon a provision in the contract between Wilson and the insurance company which gives the company a first lien upon all commissions payable for any debt due from Wilson to the company. The contract states that all money expended by the company in answering or defending any attachment or garnishment involving the defendant Wilson shall constitute a debt due. Set-off has been allowed when that remedy is available under local law. Karno-Smith Co. v. Maloney, 3 Cir., 1940, 112 F.2d 690. And set-off has been allowed pursuant to an agreement which was prior to the lien asserted by the United States. United States v. Winnett, 9 Cir., 1947, 165 F.2d 149. It has been held that at the time the Government levied upon a depositor's bank account nothing was owed since a demand note held by the bank liquidated the balance. United States v. Bank of United States, D.C.1934, 5 F.Supp 942; cf. Transmix Concrete of Rockdale v. United States, D.C.1956, 142 F.Supp 306. But cf. United States v. Bank of Nevada, D.C.Nev.1957, —— F.Supp ——. Even where the set-off and the tax liens attach simultaneously the federal tax lien is superior. United

States v. Graham, D.C.1951, 96 F.Supp 318. But in the instant case the federal tax lien attached before any garnishment was effected and so before any right of set-off accrued. The United States Supreme Court in United States v. Liverpool & London & Globe Insurance Co., 1955, 348 U.S. 215, 217, 75 S.Ct. 247, 248, 99 L.Ed. 268, commented upon allowing attorney fees to the garnishee as follows:

> "If the garnishment lien is not prior to the Government liens, and we have held that it is not, certainly fees allowed in that proceeding are not prior to the Government liens, and the authorization of the payment of the attorney's fees prior to the Government liens was error."

█ It is the holding of the Court that the defendant Washington National Insurance Company may not deduct the expenses and attorney fees incurred by it in connection with the garnishment proceedings from the renewal commissions owing or to become owing to the defendant Glen H. Wilson under his general agent's contract.

█ The general agent's contract of the defendant Glen H. Wilson was dated November 1, 1949. It was cancelled on October 9, 1950. The cancellation left unaffected his right to renewal commissions on policies written by him. During the pendency of these proceedings such renewal commissions have been accumulating. The right to such renewal commissions will continue for some time in the future. The Government requests that the Court order the defendant Washington National Insurance Company to pay it the accumulated renewal commissions to apply upon its tax lien. The Government also requests that the Court order the defendant Washington National Insurance Company pay to it for similar application the renewal commissions which become owing to the defendant Glen H. Wilson in the future. The question is raised as to the form of relief that may properly be granted in connection with the renewal commissions.

Section 6332, Title 26, United States Code, provides, in part, as follows:

> "Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, * * * *"

The procedure provided in that Section is in substance garnishee process.

Section 7403, Title 26, United States Code, provides, in part, as follows:

> "(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

> "(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto."

The Government was brought in as a party defendant in proceedings auxiliary to execution. Those proceedings developed into an action having all the characteristics of an action under Section 7403. Proceedings auxiliary to execution are equitable in character. It is the view of the Court that it may mold its relief to fit the situation presented herein.

It is held that unearned wages of a debtor are not subject to garnishment. Stowe v. Breen, 1941, 230 Iowa 1215, 300 N.W. 518. This is true even though the statutes relating to garnishment pur-

port to provide for amounts "to become due." Thomas v. Gibbons, 1883, 61 Iowa 50, 15 N.W. 593. In United States v. Long Island Drug Co., 2 Cir., 1940, 115 F.2d 983, the Court refused to give the Government a judgment against the delinquent taxpayer's future earnings. The Court stated (115 F.2d at page 987):

"We find nothing in § 3690 or § 3710 which varies the general rule that a garnishee process is not to be extended to future earnings, * * *"

However, a situation involving unearned wages is to be distinguished from a situation involving an obligation payable to the debtor in installments. See Cox v. Russell, 1876, 44 Iowa 556. In that latter situation a judgment in garnishment may be rendered under which the installment payments are applied for the benefit of the creditor. See 1949, 7 A.L. R.2d 680.

An existing obligation for services rendered is properly subjected to a Government tax lien. Glass City Bank of Jeanette, Pennsylvania v. United States, 1945, 326 U.S. 265, 268, 66 S.Ct. 108, 90 L.Ed. 56. In Fried v. New York Life Insurance, 2 Cir., 1957, 241 F.2d 504, certiorari denied, May 27, 1957, the Court required monthly disability payments under an insurance policy to be paid to the Government to apply on the insured's delinquent taxes. Apparently the Court required those sums to be paid each month as they accrued. Those payments were unlike future earnings in that they were the product of a contractual right which the insurance company could not defeat and were contingent only upon the continued life of the insured. In the present case the services which entitle the defendant Glen H. Wilson to the renewal commissions have already been rendered. They are payable under an existing obligation. The Government could reach renewal commissions hereafter accruing by repeated levies. Such levies would entail frequent additional and unnecessary expense.

It is the view of the Court that this Court may properly provide that the renewal commissions to which the defendant Glen H. Wilson is entitled on premiums hereafter paid on policies written by him shall be paid by the defendant Washington National Insurance Company to the Government to apply upon its tax lien.

It Is Hereby Ordered that judgment shall be entered (1) adjudging and decreeing that the claim of the Government under its tax lien is prior and superior to the claim of the plaintiffs to the renewal commissions in question which are now owing and which will hereafter become owing; (2) denying the claim of the defendant Washington National Insurance Company for expenses and attorney fees incurred in connection with the garnishment proceedings; (3) ordering the defendant Washington National Insurance Company to pay to the Government the accumulated renewal commissions now owing to apply upon its tax lien; (4) ordering that the defendant Washington National Insurance Company pay to the Government quarterly the renewal commissions which have become owing during the quarter. As permitted by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.;

It Is Further Ordered that this opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.