**UNITED STATES of America, Plaintiff,**

v.

**Frank C. BRAME, Coeur D'Alenes Company, Bill Zanetti, Bromo Zanetti, d/b/a Zanetti Brothers, First National Bank of Wallace, Idaho, Defendants.**

No. 2396.

United States District Court
D. Idaho, N. D.

June 25, 1965.

Jay F. Bates, Asst. U. S. Atty., Dist. of Idaho, Boise, Idaho, for plaintiff.

Piatt Hull, H. J. Hull & Sons, Wallace, Idaho, for defendants.

McNICHOLS, District Judge.

This matter is before the court to determine the relative precedence between a tax lien of the United States and that of an attaching creditor in the State of Idaho whose claim has been reduced to judgment.

Plaintiff, the United States of America, initiated this action pursuant to Sections 7401 and 7403 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 7401 & 7403), to foreclose plaintiff's tax liens against the property and rights to property of defendant-taxpayer Frank C. Brame.

Jurisdiction of the court is based on 28 U.S.C. § 1340 and § 7402(a) of the Internal Revenue Code of 1954 (26 U.S. C. § 7402(a)).

Also named as parties defendant to the suit were the Coeur d'Alenes Com-

pany of Coeur d'Alene, Idaho, and Bill and Bromo Zanetti, d/b/a Zanetti Brothers, of Wallace, Idaho, creditors of defendant-taxpayer Frank C. Brame, and First National Bank of Wallace, Idaho, the holder of a fund of money payable to the account of defendant-taxpayer Frank C. Brame.

Plaintiff more specifically, by this action, seeks foreclosure of the aforementioned tax liens against the fund of money held by defendant First National Bank of Wallace to the account of defendant-taxpayer Brame.

Defendant First National Bank of Wallace, by way of answer, admitted the existence of a sum of $1,769.26 originally payable to the defendant-taxpayer Brame. Defendant Bank, however, continues to hold this fund, by reason of various attachments and executions levied on it by defendant Coeur d'Alenes Company and defendants Bill and Bromo Zanetti, d/b/a Zanetti Brothers and the tax liens of the plaintiff, subject to the order of the court which will exonerate the defendant Bank from any liability with respect to the fund.

Default judgment was taken against Bill and Bromo Zanetti, d/b/a Zanetti Brothers and defendant-taxpayer Frank C. Brame on November 25, 1964 for failure to defend this action.

Defendant Coeur d'Alenes Company (hereinafter defendant) by answer alleged that it was a judgment creditor within the meaning of 26 U.S.C. § 6323 and therefore entitled to priority over plaintiff's tax liens in the fund held by First National Bank of Wallace.

A hearing was held on the cause March 18, 1965 wherein counsel for plaintiff and defendant stipulated to the following facts:

1. That plaintiff on January 13, 1961 levied an assessment for withholding taxes, penalties and interest against Frank C. Brame in the amount of $905.89.

2. That the foregoing levy of assessment for unpaid taxes was filed for record in the Shoshone County Clerk's Office on May 25, 1961.

3. That on October 20, 1961, plaintiff levied assessments for withholding taxes, penalties and interest in the amount of $223.13 and $56.13 against Frank C. Brame which were recorded in the Shoshone County Clerk's Office on November 27, 1961. As to these assessments, however, the parties agreed there was no contest since they were subsequent to defendant's levy of execution (May 31, 1961) on a judgment it received December 7, 1961 against Frank C. Brame.

4. That on October 19, 1960, the defendant instituted an action against Frank C. Brame for a debt owed and on that same date caused a writ of attachment to be served upon First National Bank of Wallace attaching funds in the sum of $1,769.06, then payable to the account of Frank C. Brame.

5. That on December 7, 1960, the defendant had judgment on its claim against Frank C. Brame in the District Court of Shoshone County, Idaho, in the amount of $1,102.43 with interest thereon until paid.

6. That on May 31, 1961, levy of execution on the judgment received by the defendant was served on the First National Bank of Wallace.

Counsel for both parties further stipulated that the matter would be submitted on briefs to the court which have been duly received and considered.

The plaintiff United States bases its claim of right to the fund on a statutory tax lien under § 6321 of the Internal Revenue Code of 1954 (26 U.S.C. § 6321) which provides in part:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Defendant Coeur d'Alenes Company urges that it is a judgment creditor with-

in the meaning of § 6323 of the Internal Revenue Code of 1954 (26 U.S.C. § 6323) which provides in part:

"* * * the lien imposed by section 6321 shall not be valid as against any * * * judgment creditor until notice thereof has been filed by the Secretary or his delegate * *"

Additionally, defendant contends that by virtue of the attachment and judgment, which occurred prior to the recording of plaintiff's tax lien, that it is entitled to priority under the doctrine of "first in time is first in right".

It is the position of the plaintiff that an attachment of personal property and entry of judgment thereon is insufficient to establish a priority of right but that defendant must have had levy of execution on the judgment prior to the recording of plaintiff's tax lien to result in a priority.

The issue thus presented for determination is whether an attachment of personal property and judgment thereon prior in time to the recordation of a federal tax lien entitles the holder to a priority in satisfaction of his claim out of the attached property.

The statute creating the federal lien asserted here, I.R.C. § 6321 (26 U.S. C. § 6321) is a general lien and does not by its terms confer a priority over competing non-federal liens. Rather, priority is determined, as in the case of any other incumbrances, by the principle of "first in time, is first in right". United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

The tax lien created by § 6321 arises upon the date the unpaid taxes are assessed by the District Director of Internal Revenue (26 U.S.C. § 6322). However, as to the specific interests mentioned in I.R.C. § 6323(a), (26 U.S.C. § 6323(a)) i. e., mortgagees, pledgees, purchasers and judgment creditors, such lien is not valid until placed of public record.

Under the general principle of "first in time, is first in right" the rela-tive priority of right between competing federal and non-federal statutory liens must depend upon the time each lien attached to the property and became choate. United States v. City of New Britain, supra.

The "choate lien rule" likewise applies to the holder of a state-created lien who claims a preference under I.R.C. § 6323. Thus, in United States v. Pioneer American Ins. Co., 374 U.S. 84, at p. 89, 83 S. Ct. 1651, at p. 1655, 10 L.Ed.2d 770 (1963) it is stated:

"Rather, we believe Congress intended that if out of the whole spectrum of state-created liens, certain liens are to enjoy the preferred status granted by § 6323, they should at least have attained the degree of perfection required of other liens and be choate for the purposes of the federal rule."

It therefore appears that the defendant herein, to sustain his position of priority under either the general principle of "first in time, is first in right" or as a judgment creditor under § 6323 must be the holder of a perfected or choate lien.

"The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." United States v. Security Trust & Savings Bank, 340 U.S. 47, at p. 49, 71 S.Ct. 111, at p. 113, 95 L.Ed. 53 (1950).

The rule has been restated in United States v. Gilbert Associates, Inc., 345 U. S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. City of New Britain, Conn., supra; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L. Ed. 264 (1955); and United States v. Pioneer American Insurance Co., supra.

"The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court." United States v. Acri, supra, at p. 213, 75 S.Ct. at p. 241; United States v. Gilbert Associates, Inc., supra; and United States v. Waddill Co., 323 U.S. 353, 65 S. Ct. 304, 89 L.Ed. 294 (1945).

■ The priority of a lien created by state law depends upon the time it attached to the property in question and became choate. United States v. Pioneer American Ins. Co., supra; United States v. City of New Britain, Conn., supra; and United States v. Security Trust and Savings Bank, supra.

■ A choate state-created lien takes priority over a later arising federal tax lien. United States v. Pioneer American Ins. Co., supra; and United States v. City of New Britain, Conn., supra. An inchoate state lien does not prevail over a later arising federal lien. United States v. Pioneer American Ins. Co., supra.

■ A lien is choate according to the federal rule when the identity of the lienor, the property subject to the lien and the amount of the lien are established. United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); United States v. Pioneer American Ins. Co., supra. and United States v. City of New Britain, supra.

In United States v. State of Vermont, supra, the Supreme Court distinguished between a federal claim based on a tax lien arising under § 6321 and those arising under § 3466 of the Revised Statutes [1] (31 U.S.C. § 191) and reaffirmed the test set out in United States v. City of New Britain, Conn., supra, to establish a choate lien entitled to priority.[2]

A "judgment creditor" within the meaning of § 6323(a) was defined by the Supreme Court in United States v. Gilbert Associates, Inc., supra, at p. 364, 73 S.Ct. at p. 703: "A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a 'judgment creditor' should have the same application in all the states. In this in-

stance, we think Congress used the words 'judgment creditor' in § 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts." The term "judgment creditor" as used in § 6323(a) [3] has been further construed by certain of the lower federal courts to mean a "judgment lien creditor", i. e., a judgment must have been recovered against the taxpayer which created a lien on the property of the taxpayer against which a priority is asserted. Miller v. Bank of America, N.T. & S.A., 166 F.2d 415 (9th Cir., 1948); Ersa, Inc. v. Dudley, 234 F.2d 178 (3rd Cir., 1956); Beeghly v. Wilson, 152 F. Supp. 726 (N.D. Iowa, 1957); United States v. Levin, 128 F.Supp. 465 (D.Md., 1955); United States v. Fisher, 93 F. Supp. 73 (N.D.Cal., 1948).

If, then, an attachment and judgment thereon establish a perfected or choate lien under Idaho law, the defendant herein should be entitled to priority in the disputed fund in satisfaction of his claim under either theory which he advances. Defendant's attachment date was October 19, 1960 and judgment was received December 7, 1960. According to § 6322, the lien of the government for unpaid taxes arises when the assessment is made by the District Director. Here, the assessment was made January 13, 1961. The lien of the government does not arise as to the special classes listed in § 6323(a) until such lien is made of public record. Here, the federal lien was recorded May 25, 1961. Tested by the rules as established by the U. S. Supreme Court in the previously cited decisions, the defendant's lien was choate in the federal sense. In either circumstance, the identity of the lienor, the property subject to the lien, and the amount of the lien were con-

1. 31 U.S.C. § 191 provides in part: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of executors or administrators, is insufficient to pay all the debts due from the deceased, the debts of the United States shall be first satisfied * * *."

2. A competing non-federal lien, to be perfected and choate, must be definite in three respects, (1) the identity of the lienor, (2) the property subject to the lien, and (3) the amount of the lien. (United States v. City of New Britain, supra).

3. Section 6323 of the Internal Revenue Code of 1954 (formerly § 3672 of the Internal Revenue Code of 1939).

clusively established on either of the critical dates, January 13, 1961 or May 25, 1961.

The issue of whether or not an attachment and judgment create a perfected or choate lien in Idaho appears to be one of first impression. The Idaho statutes are silent on this subject and no Idaho case law directly in point has been found.

Plaintiff attaches significance to the fact that I.C.A. § 10–1110 provides that a judgment constitutes a lien upon the real property only of the judgment debtor. The lien contemplated by § 10–1110 is statutory in nature, it requires no attachment prior to judgment to have benefit of the lien created and is not relevant to the issue at hand.

The primary contention of the government, if correctly understood, is that defendant holds an unperfected or inchoate lien for state purposes and therefore such lien is inchoate in the federal sense and not entitled to priority. The reason given is that an attachment of personal property and judgment thereon are insufficient, but that levy of execution is necessary to perfect a lien over the property attached. In support of their position, the government relies mainly on Miller v. Bank of America, supra.

In that case, the appellant Miller appealed from a U. S. District Court decision whch held that certain liens of the United States were superior to Miller's lien. In the lower court action, Miller had instituted suit against the debtor-taxpayers in the Superior Court of Mendocino County; January 5, 1944, appellant caused a writ of attachment to be served upon the Bank of America; March 11, 1944, appellant was awarded a default judgment which was entered of record in the office of the County Clerk of Mendocino County, California, on the same date. The United States had various tax claims against the debtor-taxpayers, the assessment lists for which were received by the District Director of Internal Revenue [4] subsequent to Miller's judgment, which all were made of record April 21, 1944, by filing with the County Recorder of Sonoma County, California. On that same date, the United States served notice of levy for the total taxes due the United States upon the Bank of America at its Healdsburg Branch, Sonoma County, California, the branch bank where the debtor-taxpayers had a fund of money to their credit. In the appellate court, Miller urged that a "judgment creditor" within the meaning of § 3672 (a) of the Internal Revenue Code [5] required nothing more than rendition and entry of judgment. The court dismissed this argument pointing out 166 F.2d at p. 417 of their opinion that: "it is the lien created by the claim of the creditor within the meaning of the recording acts which is contemplated, and not just the claim itself." The court then went on to discuss the various aspects of the general rule that a judgment in and of itself does not create a lien upon personalty, unless made so by statute, without levy of execution. The appellant made no argument concerning the effectiveness of his attachment prior to judgment as creating a perfected lien and the only reference made by the court on this point, which appears on p. 419 of the opinion, is dictum.

The California attachment statute in effect at the time of this decision provided that debts owed or credits possessed by a bank maintaining branch offices must be attached by leaving a copy of the writ and notice with the manager at the branch at which the account evidencing the indebtedness is carried, and that no attachment is effective as to any debt owing by such bank if the account is carried at a branch not served. It further provided that an attachment of property shall be effective only in the county of the sheriff serving the writ. It is therefore apparent that the appellant's attachment was ineffective, the record

---

4. Under the Internal Revenue Code of 1939 (§ 3671), the lien arose when the Collector of Internal Revenue received the assessment list disclosing the liability for tax.

5. Ibid: footnote 3.

disclosing no action instituted by him in Sonoma County and he was considered by the appellate court as nothing more than an ordinary money judgment creditor. Clearly, the Miller case is distinguishable from the instant case where a perfected attachment had been made prior to judgment.

The remaining cases relied upon by the government, while authority that a judgment creditor must have levy of execution on personal property to have a choate lien, are clearly distinguishable from the facts of the present case. Thus, in Ersa, Inc. v. Dudley, supra, the lien of a judgment creditor did not attach to personalty and become choate until issuance of a writ of fieri facias and delivery to a sheriff for execution as required by a state statute. Beeghly v. Wilson, supra, did not involve an attachment prior to judgment, the judgment creditors in that case failed to execute their judgments prior to the attachment of a federal tax lien. United States v. Levin, supra, involved no attachment, a state statute provided that a lien does not attach upon personal property until the judgment creditor causes a writ of fieri facias to be delivered to the sheriff which the judgment creditor in this case never caused to be issued; and United States v. Fisher, supra, where the attaching creditor did not receive judgment until after the lien of the federal government had arisen for unpaid taxes.

"An attachment creates a lien or encumbrance on the property attached, especially when levied on the property and certainly after it is carried into a decree, which lien is perfected when the attachment suit ends in a judgment for the plaintiff and may be made available to the creditor." 7 C.J.S. Attachment § 254 at p. 430.

"The usual and practical theory is that an attachment creates a lien, or quasi lien of a limited nature, on the property attached." 6 Am. Jur. 2d § 454 at p. 877.

"An attachment or garnishment lien is said to be contingent, or inchoate, at least until final judgment against the defendant, or against the defendant and the garnishee." Ibid., § 458 at p. 880.

The Idaho attachment statute, I.C.A. § 8–501, reads in part:

"The plaintiff at the time of the issuing of the summons, or at any time afterwards may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment * * *"

The California attachment statute, from which the Idaho statute is patterned, contains similar, if not identical, language. In Rialto Publishing Company v. Bass, 325 F.2d 527 (9th Cir., 1963), although a bankruptcy proceeding, involved the same question as here—when under California law, does the attachment lien become completely effective as a valid perfected, existing lien? Quoting from the decision at p. 529 of the opinion:

"In the case of Puissegur v. Yarbrough, 29 Cal.2d 409, 412, 175 P.2d 830, 831, the California Supreme Court sitting en banc held with the concurrence of all the judges that

" 'The attaching creditor obtains only a potential right or a contingent lien * * *.'

That rule was so thoroughly considered and so firmly established by the California Supreme Court in Puissegur that it has been accepted in two notable federal cases, one in this Court and the other in the United States Supreme Court, referred to in the next two following paragraphs. That rule still expresses the California law on the point in question."

"In Ward v. Commissioner of Internal Revenue, 9 Cir., 1955, 224 F. 2d 547, 551, this Court ruled that

" 'The attachment is merely a sequestration of the debtor's funds to abide the judgment. They still remain the property of the debtor and title to them passes to the attaching

creditor only after a judgment in his favor has been entered, in which case the lien of the attachment is merged into that of the judgment. (Citing many cases). The lien extends only to the interest of the debtor at the time of the levy, and the attaching creditor "obtains only a potential right or a contingent lien."'' (Citing)

"In the case of United States v. Security Tr. & Savings Bank, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L. Ed. 53, 56, it was held that

" ' * * * if the state court itself describes the lien as inchoate this classification is "practically conclusive." (Citing). The Supreme Court of California has so described its attachment lien in the case of Puissegur v. Yarbrough, 29 Cal.2d 409, 412, 175 P.2d 830, 831, by stating that, "The attaching creditor obtains only a potential right or a contingent lien * * *." Examination of the California statute shows that the above is an apt description. The attachment lien gives the attaching creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists.

" 'Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of the attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison (the attachment creditor) did not have a judg-

ment lien. He had a mere "caveat of a more perfect lien to come".' "

Reasoning from the foregoing precedents, and having in mind that the purpose of the Idaho attachment law is to hold the attached property as security for a contemplated judgment, I am persuaded to conclude that the inchoate lien of the attaching creditor becomes choate in Idaho when judgment is entered.

I therefore hold that an attaching creditor in Idaho becomes a "judgment creditor" for the purpose of determining lien priorities under 26 U.S.C. § 6323, upon the entry of judgment. In the instant situation, the lien of the defendant became choate on the date of his judgment, December 7, 1960, which was prior in time to either the date the District Director made the assessment, January 13, 1961, or the date the lien of the government was recorded, May 25, 1961. The lien of the defendant was "prior in time" to the tax lien of the plaintiff, and the defendant must be granted precedence in satisfaction of the respective liens of the parties.

I conclude that defendant, Coeur d'Alenes Company, is entitled to a priority payment from the funds on deposit with the defendant, First National Bank of Wallace, Idaho, in the sum of $1,102.-43. No interest is allowed, since there is no showing as to why the attaching creditor failed to levy execution against the attached funds immediately upon entry of judgment. The plaintiff is entitled to payment of the balance of the funds held by the defendant bank to apply in partial satisfaction of the tax lien assessed on January 13, 1961.

As the facts of the case are stipulated and set forth herein, this opinion may serve as Findings of Fact and Conclusions of Law as permitted by Rule 52, F.R.Civ.P. Counsel for defendant, Coeur d'Alenes Company, will prepare and tender an appropriate judgment in conformance herewith.